# HANG & ASSOCIATES, PLLC
ATTORNEYS AT LAW
136-20 38th Avenue, Suite 10G
Flushing, New York 11354

December 24, 2018

Ge Qu, Esq.
Tel : (718) 353-8588
Fax: (718) 353-6288
Email: rqu@hanglaw.com

**VIA ECF**
Hon. Ronnie Abrams
United States District Court
Southern District of New York
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

      Re: **Hu et al v. Blooming Nails, Inc. et al**
        Case No. 1:17-cv-07062-RA

*Letter Motion for Settlement Approval*

Dear Judge Abrams:

  Plaintiff Wen Hu ("Plaintiff") and Defendants 260 Park S. Beauty Corp. doing business as Blooming Nails & Spa IV ("Defendants") respectfully request that the Court approve the settlement reached in this matter. A copy of the signed settlement agreement is annexed herein as **Exhibit A**.

## Settlement Amount

  Both parties believe that the settlement amount is fair and reasonable. This action was originally brought by Plaintiff for, among other things, alleged overtime violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§201 *et seq.*, and the New York Labor Law ("NYLL").

  Plaintiff alleges that she was formerly employed as a nail technician at Defendants' business in Manhattan from April 14, 2016 until July 18, 2016. She alleges that Defendants paid her a fixed daily rate of $80 regardless of the actual hours worked. Plaintiff contends that she worked six days per week, totaling approximately 52 hours per week.

  If Plaintiff were to prevail on all of her claims, including, overtime, spread of hours pay, and statutory damages for failure to provide wage notices and wage statements, exclusive of attorney's fees and costs and prejudgment interest, would total approximately $12,924.00[1].

---

[1] A damages calculation is attached as Exhibit B.

Plaintiffs are confident that they will be able to prove their allegations through witness testimonies and documentary evidence.

On the other hand, Defendants deny all of Plaintiffs' allegations in their Answer. Defendants contest Plaintiffs' working hours and maintain that Plaintiffs were paid for hours worked. During the course of the litigation, Defendants produced punch card records of Plaintiff, detailing the hours worked, pay rate, and tips received.

If Defendants were to prevail on all of their defenses, the amount of damages owed to Plaintiff would be next to $0. Significantly, if the case were to go to trial, Defendants argue that they would be able to demonstrate via documentary evidence and witness testimony that Plaintiff worked fewer hours than alleged and were properly paid compensation.

The gross settlement amount is $6,000.00, inclusive of Plaintiff's counsel's attorneys' fees and costs of $2,600.00 and settlement payment to Plaintiffs of $3,400.00. This reflects a reasonable compromise between the parties' dispute over Defendants' alleged wage and hour violations, and this amount considers the costs and the uncertainty of protracted litigation. This settlement was reached after extensive negotiations between the parties' attorneys during mediation and the parties agree that the settlement is fair and reasonable. We believe this to be a fair resolution of this matter, due to certain *bona fide* disputes about the value of Plaintiff's claims and the risks attendant with continuing the litigation.

Moreover, Plaintiff was incentivized to settle because Defendants are willing to pay the settlement in one lump sum. Should Plaintiff insist on further litigating this matter, the value of her damages would decrease not only due to ordinary litigation risks, but also simply with the passage of time, and the likelihood that any recovery would only be paid out over a significant length of time. By settling now, Plaintiff ensures that she will get much of what she could potentially recover upfront, and she does so without having to wait through months of likely fruitless discovery, then having to face the possibility that her claims may be undermined at trial.

## FLSA Settlement Approval

Judicial approval of a wage and hour settlement brought under the FLSA depends on whether it is fair and reasonable. Courts look to the following factors: "(1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In addition, given the purposes of the FLSA, factors that weigh against approving a settlement also include the following: (1) "the presence of other employees situated similarly to the claimant"; (2) "a likelihood that the claimant's circumstance will recur"; (3) "a history of FLSA non-compliance by the same employer or others in the same industry or geographic region"; and (4) the desirability of "a mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace." *Id.* at 336. (Citations omitted.)

Here, the settlement amount represents a fair comprise considering Plaintiffs' recovery ranges from $0 to $12,924.00. The settlement reflects a fair and reasonable compromise of disputed issues

rather than "a mere waiver of statutory rights brought about by an employer's overreaching." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366, (S.D.N.Y. 2013)) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Zeltser v. Merrill Lynch & Co*., 2014 U.S. Dist. LEXIS 135635, at *16 (S.D.N.Y. Sept. 23, 2014) (citations omitted).

In addition, Plaintiff faces significant litigation risks as Defendant contents Plaintiff's working hours and compensation rate as it maintains accurate punch card records. The time and costs associated with discovery, motion practice and the uncertainty about trial weighs in favor of settlement approval. In light of the uncertainties associated with establishing liability, as well as Plaintiff's desire to avoid future legal proceedings, the settlement amount reached here is reasonable. *Cf., e.g., Beckert v. Ronirubinov,* 2015 U.S. Dist. LEXIS 167052, at *4 (S.D.N.Y. Dec. 14, 2015) (holding that a settlement of approximately 25% of the amount initially sought was a "substantial proportion of the maximum possible recovery" and fair, especially in light of the risks associated with litigation);*Martinez v. Hilton Hotels Corp*., 2013 U.S. Dist. LEXIS 117738, at *9 (S.D.N.Y. Aug. 20, 2013) (Court found settlement reasonable because, *inter alia*, it was a "compromise over contested issues" "in light of the unpredictability of the outcome at trial"); *Garcia v. BAE Cleaners Inc*., 2012 U.S. Dist. LEXIS 51867, at *2 (S.D.N.Y. April 12, 2012) (holding that the settlement fair and reasonable even though the settlement amount was less than the potential liquidated damages awardable under the FLSA because it "reflect[ed] a reasonable compromise over" issues that had been "contested in the litigation").

Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable. *See, e.g.*, *Lliguichuzhca*, 948 F. Supp. 2d at 366; *Zeltser*, 2014 U.S. Dist. LEXIS 135635, at *17 (finding an FLSA settlement reasonable where, as here, it was the result of arm's-length negotiations and "Plaintiffs and Defendants were represented by counsel experienced in wage and hour law."). Here, counsel for both parties are experienced litigators. The settlement was reached after intensive negotiations during the Court's annexed mediation program. Parties exchanged multiple demands and offers of settlement before settling on the terms of this proposed settlement. Moreover, prior to entering into the settlement agreement, Plaintiff thoroughly considered the risks and benefits of continuing the litigation. The Settlement Agreement reflects the conclusion on the part of experienced counsel for all parties that the terms were a fair and reasonable assessment of their respective risks.

Other factors present do not weigh against a settlement. This matter has not been conditionally certified as a collective action; thus, the settlement of this action will have no impact on any other employees or their rights. Plaintiff is no longer employed by Defendant so there is no likelihood that Plaintiffs' circumstances will recur. Additionally, this case presents no novel questions of law that would benefit future litigants from extensive litigation.

### **Attorney's Fees**

The settlement agreement also provides for reasonable attorneys' fees. Pursuant to our firm's agreement with the Plaintiff, the Firm will be reimbursed $1,200.00 in filing fees and costs, and retain 30% of the remaining settlement amount of $4,800.00 as attorneys' fees, which is $1,400.00 (rounded to nearest whole number). Based on my experience in handling FLSA and NYLL matters, this is a standard and acceptable arrangement for attorneys' fees.

   Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). This case is distinguishable from the case cited in *Cheeks*, wherein that settlement agreement was denied because the attorneys' fees were set at between 40 and 43.6 percent of the total payment, without justification to support the higher fees. *Cheeks v. Freeport Pancake House, Inc.*, 796 F3d 199, 206 (2d Cir 2015) (*citing Lopez v Nights of Cabiria, LLC*, 96 F Supp 3d 170, 181-82 (SDNY 2015). Therefore, as one-third is standard practice in FLSA claims, 30% of is a fair number for this matter.

   While the Second Circuit's ruling in Cheeks did not outline the factors for approving a settlement, certain red-flag issues were identified, such as the inclusion of confidentiality provisions, general releases, and attorneys' contingency fees in excess of 40%. Id. at 206. This Agreement contains no such red flags. Moreover, since the Cheeks decision, many courts have recognized the "percentage of the fund" method as an appropriate means by which to compensation plaintiff's attorneys in FLSA settlements. *See Velasquez v. Digital Page*, No. 11 Civ. 3892, 2016 U.S. Dist. LEXIS 84554, at *4 (E.D.N.Y. June 28, 2016) (applying one-third of percentage of fund method in approving settlement); *see also Hiang v. Chiang*, No. 16 Civ. 1129, 2016 U.S. Dist. LEXIS 142670, at *7-8 (S.D.N.Y. Oct. 14, 2016) (awarding attorneys' fees of one-third of settlement amount in FLSA case); *Chauca v. Abitino 's Pizza 49th St. Corp.*, No. 15 Civ. 6278, 2016 U.S. Dist. LEXIS 86206, at *6 (S.D.N.Y. June 29, 2016) (awarding attorneys' fees in amount of one third of gross settlement); *Meza v. 317 Amsterdam Corp.*, No. 14 Civ. 9007, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015) (when using the "percentage of the fund" approach, "courts regularly approve attorneys' fees of one-third of the settlement amount in FLSA cases"); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 Civ. 3234, 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013) (approving attorneys' fees of onethird of the FLSA settlement amount); Febus v. Guardian First Funding Group, LLC, 870 F. Supp. 2d 337, 340-41 (S.D.N.Y. 2012) ("a fee that is one-third of the fund is typical" in FLSA cases).

   For all of the reasons set forth above, the parties request that the Court approve the Agreement.

   We appreciate the Court's attention to this matter.

                   Respectfully submitted,

                    /s/  Ge Qu
                   Ge Qu, Esq.

Via ECF:
Daniel Kim, Esq.